

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00091-CV

Melissa **HERNANDEZ**,
Appellant

v.

**CHRISTUS SPOHN HEALTH SYSTEM CORP.** d/b/a Christus Spohn Hospital Kleberg,
Appellee

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No. 14-03-53076-CV
Honorable Richard C. Terrell, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Karen Angelini, Justice
Marialyn Barnard, Justice

Delivered and Filed:  February 18, 2015

REVERSED AND REMANDED

This appeal challenges a trial court's ruling on an expert report addressing health care liability claims.  The trial court's order denied the request by appellant Melissa Hernandez for a thirty-day extension to cure the deficiencies the trial court found the report contained and granted the motion to dismiss filed by appellee Christus Spohn Health System Corp. d/b/a Christus Spohn Hospital Kleberg (the "Hospital").  On appeal, Hernandez contends the trial court abused its discretion because: (1) an expert report is not required to address causation when the plaintiff's injuries arise from a sexual assault; (2) an expert report is not required to address liability for non-

medical, administrative, or routine functions of a hospital; and (3) Hernandez was entitled to a thirty-day extension to amend her report because the report was a good faith attempt to comply with the statutory requirements.[1] Because we hold the trial court abused its discretion in denying the thirty-day extension, we reverse the trial court's order and remand the cause to the trial court for further proceedings.

## BACKGROUND

Hernandez filed the underlying lawsuit against the Hospital and one of its employees, Andres Bueno, a registered nurse. Hernandez sought medical treatment at the emergency room of the Hospital for severe stomach pain, and she alleged Bueno sexually assaulted her during the course of her treatment. After amending her pleadings, the only claim Hernandez asserted against the Hospital was a negligence claim, alleging the Hospital negligently trained, supervised, and retained Bueno and negligently failed to implement appropriate procedures to prevent sexual assaults from occurring. Hernandez timely served the Hospital with an expert report authored by Shelley A. Botello, who also is a registered nurse.[2]

The Hospital filed a motion to dismiss the appeal, asserting the report did not address the causation element of Hernandez's claim, and, even if causation was addressed in the report, Botello was not qualified to opine on causation. Hernandez filed a response to the Hospital's motion, asserting the expert report was not deficient and alternatively requesting a thirty-day extension to cure any deficiencies found by the trial court. The trial court denied Hernandez's request for an extension and granted the Hospital's motion to dismiss. Hernandez appeals.

---

[1] Hernandez also raises an issue contending the expert report was timely served; however, the Hospital concedes the expert report was timely served, and the record supports this concession.

[2] Hernandez's expert report was not timely served on Bueno, and this court previously held in a separate appeal that: (1) Hernandez failed to conclusively rebut the presumption that her claims against Bueno were health care liability claims requiring an expert report; and (2) the trial court erred in denying a motion to dismiss those claims because Bueno was not timely served with an expert report. *See Bueno v. Hernandez*, No. 04-14-00255-CV, 2014 WL 7441836 (Tex. App.—San Antonio Dec. 31, 2014, no pet.).

**STANDARD OF REVIEW AND EXPERT REPORT REQUIREMENTS**

A plaintiff asserting a health care liability claim is required to file an expert report containing "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West Supp. 2014). We review the trial court's decision regarding the adequacy of an expert report under an abuse of discretion standard. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Stephanie M. Philipp, P.A. v. McCreedy*, 298 S.W.3d 682, 686 (Tex. App.—San Antonio 2009, no pet.). An abuse of discretion occurs when a trial court acts arbitrarily or unreasonably and without reference to any guiding rules or principles. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *McCreedy*, 298 S.W.3d at 686.

**EXPERT REPORT REQUIRED**

A.      Injuries Resulting from Sexual Assault

Citing the Dallas court's decision in *UHS of Timberlawn, Inc. v. S.B. ex rel. A.B.*, 281 S.W.3d 207, 212-13 (Tex. App.—Dallas 2009, pet. denied), Hernandez contends an expert report on causation is not required in instances of rape or sexual assault. Hernandez asserts, "As sexual assault is within the general experience and common knowledge of laypersons (even if it occurred in a medical setting), an expert report identifying the causal relationship between Bueno's actions and the claimed injury is not required." We disagree.

First, the case cited by Hernandez does not support her argument. In *UHS of Timberlawn, Inc.*, S.B. alleged she was raped by a fellow patient at a psychiatric treatment facility, and asserted her injuries were proximately caused by the negligence of the facility's employees. 281 S.W.3d at 209. Although the Dallas court held that the expert was not required to opine in his report on

whether S.B. was in fact sexually assaulted, the Dallas Court further addressed whether the expert report otherwise adequately addressed causation, noting the expert report was required to causally link the facility's alleged negligence with the alleged harm or injuries suffered by S.B. *Id*. at 212-15. After reviewing the report, the Dallas court concluded that the expert report adequately addressed how the facility's breach of the standard of care caused S.B.'s injury. *Id*. at 214-15.

In *Kim v. Hoyt*, 399 S.W.3d 714, 718-19 (Tex. App.—Dallas 2013, pet. denied), the Dallas court subsequently recognized the limited nature of its holding in *UHS of Timberlawn, Inc.* Although recognizing that "the causal relationship the plaintiff must show may not always be so clear," the Dallas court noted that "identifying the causal relationship between the alleged breach and resulting harm requires an explanation as to how the breach of the standard of care gave rise to the new deleterious medical condition." *Kim*, 399 S.W.3d at 718-19. The Dallas court further noted that the expert report was sufficient in *UHS of Timberlawn, Inc.* because "it linked the breaches of the standard of care, the [facility's] housing the female patient [S.B.] in a male unit, to the harm she suffered, her self-reported rape." *Id*. at 719; *see also Kingwood Pines Hosp., LLC v. Gomez*, 362 S.W.3d 740, 750 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (noting expert report was required to address how facility's negligence or failures caused the alleged rape of a patient).

In addition to her failure to cite case law in support of her contention, Hernandez's assertion that "sexual assault is within the general experience and common knowledge of laypersons" ignores the nature of her claims against the Hospital. Hernandez's claims against the Hospital are not that the Hospital committed the sexual assault; rather, Hernandez's claims against the Hospital are that through lapses in professional judgment the Hospital negligently allowed the sexual assault to occur. *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005); *see also Holguin v. Laredo Regional Med. Ctr., L.P.*, 256 S.W.3d 348, 354 (Tex. App.—San Antonio 2008,

no pet.) (distinguishing claims against employee committing assault and negligence claims against facility where assault occurred).  To determine whether an expert report is required, we must focus on the essence of Hernandez's claims "and consider the alleged wrongful conduct and the duties allegedly breached, rather than the unfortunate injuries she suffered." *Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 851.  "It is not within the common knowledge of the general public to determine the ability of patients in weakened conditions to protect themselves, nor whether a potential target of an attack in a healthcare facility should be better protected and by what means." *Id*.  "[J]udgments concerning health and medical care, including protection of patients, are made by health care professionals as part of the care and treatment of the patients admitted to their facilities." *Id*. at 853.  Because the general public does not know "the myriad of  [ ] questions that may need to be asked, must less answered, in making such professional judgments," professional judgments regarding training and staff policies and supervision are not within the general experience of a layperson.  *Id*. at 851; *see also Holguin*, 256 S.W.3d at 355-56.  Therefore, we overrule Hernandez's contention that the expert report was not required to address causation on the basis that her injuries arose from a sexual assault.

2.      Claims Involving Non-Medical, Administrative Functions

Hernandez next contends that an expert report is not required because her claims against the Hospital relate to non-medical, administrative functions.  This court expressly rejected this argument in *Cuellar v. Warm Springs Rehabilitation Foundation*, No 04-06-00698-CV, 2007 WL 3355611, at * 2 (Tex. App.—San Antonio Nov. 14, 2007, no pet.) (not designated for publication). In that case, the appellant asserted an expert report on causation was not required "because the underlying negligence involves nonmedical, administrative, ministerial, or routine care at a hospital and the jury is competent from its own experience to determine and apply a reasonable care standard." *Id*.  This court rejected that argument and held that an expert report on causation

was required. *Id*. at *3; *see also Buchanan v. O'Donnell*, 340 S.W.3d 805, 812-13 (Tex. App.—San Antonio 2011, no pet.) (holding negligent hiring, supervision, training, and retention claims properly dismissed where no expert report was served); *Methodist Charlton Med. Ctr. v. Steele*, 274 S.W.3d 47, 50 (Tex. App.—Dallas 2008, pet. denied) (dismissing claims for negligent hiring, supervision, training, and retention that were not addressed in expert report).

Moreover, Hernandez's claims allege the Hospital was negligent in failing to take actions to protect her against a sexual assault. As previously noted, "whether a potential target of an attack in a healthcare facility should be better protected and by what means" are "not within the common knowledge of the general public." *Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 851. Accordingly, expert testimony is required to prove those claims. *Holguin*, 256 S.W.3d at 355-56.

### THIRTY-DAY EXTENSION

In her final issue, Hernandez contends the trial court abused its discretion in denying her request for a thirty-day extension to cure any deficiencies in her expert report. *See Samlowski v. Wooten*, 332 S.W.3d 404, 408 n.2 (Tex. 2011) (noting denial of extension is reviewed under an abuse of discretion standard). Although the Texas Supreme Court previously granted review to "consider under what circumstances a trial court might abuse its discretion when denying such an extension," a majority of the court could not agree on a standard that should govern the trial court's exercise of its discretion. *See Samlowski*, 332 S.W.3d at 407. In reviewing the trial court's denial of the requested extension, we are, however, mindful of the Texas Supreme Court's decision in *Scoresby v. Santillan*, 346 S.W.3d 546 (Tex. 2011).

In *Scoresby*, the Texas Supreme Court reminded us that "trial courts should be lenient in granting thirty-day extensions and must do so if deficiencies in an expert report can be cured within the thirty day period." 346 S.W.3d at 554. By statutorily providing for an extension of time to be granted, the court noted the Legislature "recognized that when an expert report can be cured in

- 6 -

thirty days, the claim is not frivolous." *Id*. The court cautioned, "It must be remembered that there are constitutional limitations upon the power of courts . . . to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." *Id*. (internal citations omitted). In view of these considerations, the court held that a thirty-day extension may be granted if a timely report is served that "contains the opinion of an individual with expertise that the claim has merit, and if the defendant's conduct is implicated." *Id*. at 557.

In this case, Botello has over twenty years of emergency trauma nursing experience and supervises a team of eight nurses who practice as emergency/forensic nurses. Apart from Bueno's actions and the concerns regarding his training, supervision, and retention, the report implicates the Hospital's conduct in training its staff in general and implementing procedures to ensure a patient's safety. For example, the report states that a staff member observed Hernandez in the examination room with her breast exposed. The report then states, "Standard of care would indicate that all staff is responsible to recognize, intervene, and then report any inappropriate behaviors or medical practice observed in violation of patient's rights." In addition, the report states that Hernandez reported Bueno's inappropriate action to another female nurse before leaving the hospital. The report then states:

> Standard of care in the acute medical setting, upon complaint to fellow staff members, is to address the complaint at the time of presentation. Practice is to notify up the chain of command to assess if further immediate action is indicated for patient safety. There is no documentation of Mrs. Hernandez' outcry to staff nurse or follow up for resolution of situation.

Finally, the report states that the Hospital breached these standards of care by failing to take the appropriate actions to protect the patient population and by failing "to provide a safe environment in which its patients could seek medical care without the fear of predator behaviors from its staff once they had been made aware of a violation of patient safety." Having reviewed the report, we conclude the report implicates the Hospital's conduct, Botello is an individual with expertise in

the emergency room setting, and Botello opines in the report that Hernandez's claim has merit. *Scoresby*, 346 S.W.3d at 557.

Although we agree that the report is deficient with regard to causation, as previously noted, "the causal relationship the plaintiff must show may not always be so clear." *Kim*, 300 S.W.3d at 718. The report does state that "the patient's right to be protected in a vulnerable time of illness was not provided to Mrs. Hernandez," which implies that Hernandez was injured due to the absence of the requisite protection. This is similar to the Texas Supreme Court's review of the expert report in *Scoresby*, in which the court noted that the report "did not state the standard of care but only implied that it was inconsistent with the Physicians' conduct." 346 S.W.3d at 557. Despite this deficiency, the Texas Supreme Court held the report was curable. 346 S.W.3d at 549; *see also Wooten v. Samlowski*, 282 S.W.3d 82, 90-91 (Tex. App.—Waco 2008), *aff'd as modified*, 332 S.W.3d 404 (Tex. 2011) (holding trial court abused its discretion in denying extension where report was deficient only because of an inadequate causal link).

We also agree with the Hospital that Botello was not qualified to opine on causation. *See Cuellar*, 2007 WL 3355611, at *3 (holding nurse not qualified to opine on causation). Hernandez can, however, cure this deficiency by obtaining a separate report on causation from a qualified expert. *See In re Buster*, 275 S.W.3d 475, 477 (Tex. 2008); *Lewis v. Funderburk*, 253 S.W.3d 204, 208 (Tex. 2008).

Finally, the Hospital argues that Hernandez failed to show that she could have cured the deficiencies because in the six months after the trial court's initial ruling, she failed to make a record demonstrating that the deficiencies could be cured. In support of this argument, the Hospital cites Justice Medina's opinion in *Samlowski*. As previously noted, however, no majority opinion was issued in *Samlowski*, so "none of the *Samlowski* opinions are binding precedent on this court." *Rosemond v. Al-Lahiq*, 362 S.W.3d 830, 841 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

Even more importantly, Justice Medina recognized in his opinion that the statute "does not express the procedure I have outlined today." 332 S.W.3d at 412. During the period of time in which the Hospital suggests Hernandez should have been obtaining a substitute report, Hernandez still had motions pending before the trial court challenging its initial ruling, and ultimately convinced the trial court to reverse its ruling with regard to her claims against Bueno. Although this court held the trial court erred in reversing its ruling, *see Bueno*, 2014 WL 7441836, at \*5, we question whether Hernandez should be faulted for focusing her attention on convincing the trial court to change its ruling as opposed to locating an expert to cure deficiencies Hernandez did not believe her report contained.

In view of the foregoing, we hold the trial court abused its discretion in denying Hernandez's request for a thirty-day extension.

## CONCLUSION

Because the trial court abused its discretion in denying Hernandez's request for a thirty-day extension to cure the deficiencies in her expert report, we reverse the trial court's order and remand the cause to the trial court for further proceedings.

Marialyn Barnard, Justice